UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                   Case No. 20-cr-20060
                                   Hon. Matthew F. Leitman

DONALD B. SMITH, JR.,

    Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (ECF No. 25)

On February 5, 2020, a grand jury indicted Defendant Donald B. Smith, Jr., on one count of felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). The charge rests in large part upon evidence that law enforcement officers seized when they searched his residence in Flint, Michigan on January 22, 2020. Officers conducted that search pursuant to a warrant issued by a state-court judge.

Smith contends that the warrant was issued in violation of the Fourth Amendment, and he now moves to suppress the evidence seized during the search. He first argues that suppression is warranted under *Franks v. Delaware*, 438 U.S. 154 (1978), because (1) the affidavit submitted in support of the search warrant was tainted by material misstatements and omissions that were made with reckless disregard for the truth, and (2) the affidavit, when modified to remove the mis-stated

1

facts and to include the omitted facts, does not establish probable cause to search the residence. Smith also argues that suppression is warranted for two additional reasons: (1) even if the facts in the supporting affidavit established probable cause to search his residence for some evidence, the warrant authorized a search for items beyond the scope of what was supported by probable cause; and (2) the warrant, and supporting affidavit, did not establish a nexus between his residence and the evidence to be seized. (*See* Smith Supp. Br., ECF No. 42, PageID.441-442.)

While Smith has reasonably identified a number of problems with the search warrant and supporting affidavit in this case, the Court declines to suppress the evidence seized pursuant to the warrant. As explained below, even if the affidavit were modified pursuant to *Franks* in every respect proposed by Smith, the affidavit would still establish probable cause to conduct a search of Smith's residence. Moreover, as further explained below, the affidavit did establish a sufficient nexus between Smith's residence and the items to be seized. Finally, suppression is not required based upon the allegedly-overbroad scope of the warrant because the officers seized the guns and drugs at issue while lawfully searching for items pursuant to the portion of the warrant that was supported by probable cause. Accordingly, Smith's Motion to Suppress is **DENIED**.

# I

## A

In January 2020, law enforcement officers from the Bay County Sherriff's Office ("BCSO") were investigating a series of larcenies involving the theft of enclosed trailers. (5/20/2021 Hr'g Tr., ECF No. 40, PageID.315-319.) One of the stolen trailers contained two snowmobiles when it was removed from its owner's property. (*Id.*, PageID.319.)

On the morning of January 22, 2020, the owner of the stolen snowmobiles informed BCSO that he had seen his snowmobiles at 2918 Nathan Ave. in Flint, Michigan (the "Nathan Residence"). (*Id.*, PageID.323.) At BCSO's request, Detective-Sergeant ("D/Sgt.") Thomas Dhooge of Michigan State Police ("MSP") drove to the Nathan Residence that morning. (*Id.*, PageID.216, 245.) Once D/Sgt. Dhooge arrived, he observed a snowmobile in the driveway that matched the description of one of the stolen snowmobiles. (*Id.*, PageID.216.) The snowmobile was parked on the portion of the driveway that was closest to the house. (*See* 5/20/2021 Hr'g Ex. 1, ECF No. 43-1.). Two cars were parked between the snowmobile and the street. (*See id.*; 5/20/2021 Hr'g Tr., ECF No. 40, PageID.220.)

D/Sgt. Dhooge relayed his findings to his MSP colleague, D/Sgt. Joshua Dirkse, and D/Sgt. Dirkse then wrote a search warrant application for the Nathan Residence (the "Application"). (5/20/2021 Hr'g Tr., ECF No. 40, PageID.223-224.)

D/Sgt. Dirkse used a prior search warrant application as a template for the Application. (*Id.*, PageID.277-278.) D/Sgt. Dirkse submitted his own affidavit (the "Dirkse Affidavit") in support of the Application. That affidavit provided, in relevant part:

1. That I am a Michigan State Police Detective with 20 years' experience and am assisting the Det. Matt Pett with the Bay County Sheriff's Office from Bay City, MI. Det. Pett is investigating a larceny of snowmobiles and enclosed trailer, his complaint number is 1910905617.

2. A subject had been in contact with the nephew of the owner of the stolen snowmobile advising that they were currently at 2918 Nathan Ave. in Flint, Ml.

3. Upon hearing this information, the owner drove passed 2918 Nathan Ave and from the road identified his Skidoo 700 snow mobile parked in the driveway. He could positively identify it by the customized windshield and colors.

4. There is another snowmobile in the driveway that is covered up that is believed to also be another stolen snowmobile.

5. The snowmobiles in the driveway at 2918 Nathan Ave have been confirmed by VIN number as the reported stolen snowmobiles.

6. In the driveway of 2918 Nathan Ave. is a U-Haul Pickup truck with Arizona registration plate of AJ69678.

7. D/Sgt. Thomas Dhooghe contacted U-Haul who advised that the U-Haul truck was due back on 1/22/20. A demand to return the vehicle if stopped by police was placed on the truck.

8. Det. Pett advised that they have investigated three total larceny of trailers where a U-Haul truck was used to pull them based on witness's testimony and video surveillance.

9. One U-Haul Truck was returned to U-Haul and had stolen tools in them identified by serial numbers reported to Det. Pett.

10. Communication was made between the suspect and the victim and his representatives through a texting APP with the phone number of 248-775-[] used by the suspect.

11. Through training and experience, your affiant knows that texting APPS are known to be used on cellphones, tablets, computers and any other type of electronic communications device.

12. Further, your affiant and/or fellow officers are seeking a search warrant for the residence(s) of the above noted suspects. That your affiant believes based on the circumstances detailed above that evidence of the above described homicide and other criminal activity may be found at the below described residence, including but not limited to: DNA evidence, fingerprints, palm prints, controlled substances, computers and the contents therein, electronic storage devices, cell phone(s) and the contents therein, weapons and/or ammunition, papers and effects showing occupancy, ownership, dominion, or control of said premises, including but not limited to rent and property receipts, keys, bills, and cancelled mail envelopes, stolen property and/or stolen snowmobiles and any other evidence leading to disposition of the larceny of snow mobiles and an enclosed trailer, will be found at **THE FOLLOWING DESCRIBED PLACE(S)**:

    The entire premises, dwelling, curtilage, garages, outbuildings, storage units, vehicles and/ or persons coming to and exiting from the below-described residence, cell phones, cameras, safes and computers and the contents therein of the aforementioned items, located at 2918 Nathan Ave, City of Flint, Genesee county . . . .

12. Your affiant believes there is probable cause to search the above-described residence including any out buildings for evidence of the above-described crime(s) including cell phones and/or computers and any other electronic device that may have been used for the communication described above.[1]

(Dirkse Aff., ECF No. 25, PageID.95-96.)

---

[1] The affidavit contains two separate paragraphs bearing the number 12.

After completing the Application, D/Sgt. Dirkse emailed it (along with the Dirkse Affidavit) to Judge Mark Latchana of the 67th District Court for the State of Michigan. (5/20/2021 Hr'g Tr., ECF No. 40, PageID.285, 301.)  D/Sgt. Dirkse then called Judge Latchana and swore to the contents of the Dirkse Affidavit by telephone. (*Id.*, PageID.285-286.)  Judge Latchana then issued the requested warrant for the search of the Nathan Residence. (*Id.*, PageID.294.)

MSP proceeded to execute the search warrant at the Nathan Residence.  In the kitchen of the residence, officers found power tools and construction equipment, body armor, a powdery substance believed to be cocaine, and digital scales. (*Id.*, PageID.233.)  In the bedroom, officers discovered a large safe, and they opened it with the assistance of the Flint Fire Department. (*Id.*, PageID.233-234.)  Inside the safe, officers found a cell phone, a computer, a piece of mail with Smith's name on it, drugs, weapons, and ammunition. (*Id.*, PageID.234-235.)

B

On February 5, 2020, a grand jury indicted Smith on one count of felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). (*See* Indictment, ECF No. 10.) On September 8, 2020, Smith filed a motion to suppress the evidence seized from the Nathan Residence and a request for a *Franks* hearing. (*See* Mot., ECF No. 25.)  The Government opposed the motion. (*See* Resp., ECF No. 27.)  The Court

granted Smith's request and held a *Franks* hearing on May 20, 2021. (*See* Notice, ECF No. 38.)

At the *Franks* hearing, the Court heard testimony from D/Sgts. Dhooge and Dirkse (both from MSP) and D/Sgt. Matthew Pett and Investigator Patrick Woody (both from BCSO). The officers' testimony revealed a number of problems with the Dirkse Affidavit. Many of the problems appeared to stem from the fact the D/Sgt. Dirkse used a prior affidavit in a homicide and/or drug case as the template for the Dirkse Affidavit. For example, the affidavit stated that the Dirkse was investigating a "homicide," (Dirkse Aff. ¶ 12, ECF No. 25, PageID.96.), but he admitted that that was not true and that he was solely investigating a theft of snowmobiles. (5/20/2021 Hr'g Tr., ECF No. 40, PageID.309.). Likewise, the affidavit stated that Dirkse believed that DNA, weapons, and controlled substances would be found in the Nathan Residence, (Dirkse Aff. ¶ 12, ECF No. 25, PageID.96.), but D/Sgts. Dirkse and Dhooge both admitted that, at the time Dirske submitted the Application to Judge Latchana, they had no reason to believe any such evidence would be at the Nathan Residence. (5/20/2021 Hr'g Tr., ECF No. 40, PageID.253-256, 303-304.)

After the *Franks* hearing, at the Court's direction, Smith filed a supplemental brief identifying what he believed to be the misstatements and omissions in the Dirkse Affidavit. (Smith Suppl. Brief, ECF No. 42.) In this brief, Smith argues that once these misstatements are stricken from the affidavit, and the material omissions

read into the affidavit, the modified affidavit no longer establishes probable cause to search the Nathan Residence. (*See id.*, PageID.440.) In addition, Smith argues that the warrant is invalid for two separate and independent reasons: (1) it is overbroad; and (2) it does not establish a nexus between the Nathan Residence and the evidence to be seized. (*See id.*, PageID.441-442.) The Government filed its own post-hearing supplemental brief in which it once again urged the Court to deny the motion. (*See* Gov't Supp. Br., ECF No. 43.)

## II

### A

The Court begins with Smith's Fourth Amendment claim under *Franks*. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Whether the required probable cause exists depends upon the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 230 (1983). "The task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information,

there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.

When a defendant challenges the sufficiency of an affidavit submitted in support of a search warrant, "the duty of a reviewing court is simply to ensure that the [issuing judge] had a substantial basis for ... conclud[ing] that probable cause existed." *Id.* (quotations omitted). "The affidavit should be reviewed in a commonsense—rather than a hypertechnical-manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004). Finally, "[t]he [issuing judge's] determination of probable cause is afforded great deference, and that determination should be reversed only if the magistrate arbitrarily exercised his discretion." *Id.*

But what should a reviewing court do when a defendant presents evidence that law enforcement officers misled a judicial officer into issuing a warrant by making false statements in, or omitting important information from, a search warrant affidavit? *Franks* answers that question. Under *Franks*, a reviewing court "must strike from the warrant affidavit statements that the defendant can prove by a preponderance of the evidence to be both (a) materially false and (b) made with reckless or intentional disregard for their falsity." *United States v. Elkins*, 300 F.3d 638, 649 (6th Cir. 2002) (citations omitted). "If the redacted affidavit, purged of

9

recklessly and materially false statements, no longer establishes probable cause, then the court must hold the resulting search warrant invalid." *Id.* (footnote omitted). Likewise, if a defendant proves by a preponderance of the evidence that an affidavit contains material omissions made with reckless disregard for the truth, a court must "analyze the affidavit 'including the omitted portions and determine whether probable cause still exists.'" *United States v. West*, 520 F.3d 604, 611 (6th Cir. 2008) (quoting *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997)).

**B**

In Smith's attack on the warrant under *Franks*, he argues that the Dirkse Affidavit – on which Judge Latchana relied in issuing the warrant – is tainted by the following material misstatements and omissions[2]:

---

[2] In addition to the identifying the allegedly false statements and material omissions set forth above in the text, Smith highlighted the statement in the Dirkse Affidavit that the owner of the stolen snowmobiles drove past the Nathan Residence and "positively identif[ied]" one of the snowmobiles in the driveway as his snowmobile based upon "the customized windshield and colors." (Dirkse Aff., ECF No. 25, PageID.95.) Smith does not contend that this statement of what the victim reported to police is false, (*see* Smith Supp. Brief, ECF No. 42, PageID.423), but he does question whether the victim was actually able to identify the snowmobile based upon the windshield. (See *id.*) Smith also directs the Court to the statement in the Dirkse Affidavit that "[t]he snowmobiles in the [Nathan Residence driveway] have been confirmed by VIN number as the reported stolen snowmobiles." (*Id.*, PageID.424.) Smith contends confirmation of this information could "only have occurred subsequent to the [BCSO officers] illegally entering onto Mr. Smith's property without the requisite warrant." (Smith Supp. Brief, ECF No. 42, PageID.424.) In response to this argument by Smith, the Government has agreed that the statement in the Dirkse Affidavit concerning the VIN number should be redacted from the affidavit. (Supp. Resp., ECF No. 43, PageID.456.)

10

1. ***Omission of Information Concerning the U-Haul Pickup Truck at the Nathan Residence***: The Dirkse Affidavit states that "a U-Haul Pickup truck" was in the Nathan Residence driveway. (Dirkse Aff. ¶ 6, ECF No. 25, PageID.95.)  The affidavit also states that officers were investigating three trailer larcenies involving the use of "a U-Haul truck" and that "a U-Haul Truck" had been previously returned (to U-Haul) with stolen tools in it. (*Id.* ¶ 8-9, PageID.95-96.)  Smith asserts that when the affidavit was sworn, the U-Haul pickup truck was no longer at the Nathan Residence as it had been stopped on the street nearby. (Smith Supp. Brief, ECF No. 42, PageID.425.)  Moreover, Smith notes that by the time the affidavit was sworn, officers had searched the truck and had not found any contraband or stolen tools. (*Id.*)  Finally, Smith argues that the affidavit falsely implies that the U-Haul pickup truck in the driveway was the same type of truck used the prior trailer thefts. (*Id.*, PageID.426.)  According to Smith, the trucks used in the prior thefts were "box trucks," not pickup trucks like the one in the driveway. (*Id.*)

2. ***Omission of Information Concerning the Suspect in the Larceny Investigation***: The affidavit states that "[c]ommunication was made between the suspect and the victim[.]" (Dirkse Aff. ¶ 10, ECF No. 25, PageID.96.)  The affidavit also states that officers were seeking a "search warrant for the residence[s] of the above noted suspects." (Dirkse Aff. ¶ 12, ECF No. 25, PageID.96.)  Smith argues this sentence falsely implies a connection between the "suspect" and the Nathan Residence. (Smith Supp. Brief, ECF No. 42, PageID.426.)  Smith notes that testimony at the *Franks* hearing revealed (a) the only "suspect" in this investigation was an individual named Mark Hartman, and (b) police did not have any reason to believe that Hartman lived at, or was connected to, the Nathan Residence and in fact thought it was "unlikely" that he lived there. (Smith Supp. Brief, ECF No. 42, PageID.426-427; 5/20/2021 Hr'g Tr., ECF No. 40, PageID.307, 356.)  Smith thus contends that the implication of a connection between the "suspect" and the Nathan Residence in the affidavit was "disingenuous." (Smith Supp. Brief, ECF No. 42, PageID.426.)

3. ***False Statements and Omissions Concerning Connection between the Nathan Residence and Electronic Communications***: The affidavit states that the communication between the suspect and victim was made on a texting app. (Dirkse Aff. ¶ 10, ECF No. 25, PageID.96.)  It further states that officers believed they would find computers, cell phones, and other electronic storage devices at the Nathan Residence. (Dirkse Aff. ¶ 12, ECF No. 25, PageID.96.)  It likewise states the affiant believed there was probable cause to search the

11

residence for such devices and their contents. (*Id.* ¶ 12, PageID.97.) Smith contends that these statements were false. He argues that "the police had no verifiable information tying **any** electronic device to inside the" Nathan Residence. (*Id.*, PageID.428). Smith also highlights that officers had already seized Smith's cellphone before finalizing the Dirkse Affidavit and that Dirkse failed to include that fact in the affidavit. (*Id.*)

4. ***False Statement Concerning "Homicide" Investigation***: The affidavit states the affiant believes "that evidence of the above described *homicide*" may be found at the Nathan Residence. (Dirkse Aff., ¶ 12 ECF No. 25, PageID.96) (emphasis added). Smith argues this misstatement "could easily change the mind-set" of the reviewing judge. (*Id.*)

5. ***False Statement Concerning Presence of DNA and Similar Evidence at the Nathan Residence***: The affidavit states officers believed they would find "DNA evidence, fingerprints, palm prints" at the Nathan Residence. (Dirkse Aff. ¶ 12, ECF No. 25, PageID.96.) Smith contends law enforcement never intended to search the Nathan Residence for any such evidence. (Smith Supp. Brief, ECF No. 42, PageID.430.)

6. ***False Statement Concerning Presence of Firearms and Controlled Substances at the Nathan Residence***: The affidavit states officers believed they would find evidence of weapons, ammunition, and controlled substances at the Nathan Residence. (Dirkse Aff. ¶ 12, ECF No. 25, PageID.96.) Smith argues that "the consistent testimony of each and every police witness was that there were **no** facts leading officers to believe any such items would be found within the [Nathan Residence], much less facts lending themselves to probable cause." (Smith Supp. Brief, ECF No. 42, PageID.430).

7. ***Omission Concerning Ownership of the Nathan Residence***: The affidavit fails to mention that the police had no evidence tying their only suspect, Mark Hartman, to the Nathan Residence. (Dirkse Aff., ECF No. 25, PageID.95-97.) The affidavit also failed to mention that police had identified records tying Smith and another person, Patrick Brock, to the Nathan Residence, and that police had no evidence connecting either of them to the thefts that they were investigating. (5/20/2021 Hr'g, ECF No. 40, PageID.328, 344.) Smith contends this exculpatory information is material to the determination of whether there was probable cause linking the Nathan Residence to the larceny investigation. (Smith Supp. Brief, ECF No. 42, PageID.434-435.)

**C**

12

As noted above, when applying *Franks*, this Court must (1) eliminate from the Dirkse Affidavit all of the inculpatory statements that were made with a reckless disregard for the truth, and (2) add back into the affidavit those exculpatory statements that were omitted with a reckless disregard for the truth. For purposes of this ruling, the Court is willing accept Smith's identification (as set forth immediately above in section III.A) of the false statements that must be stricken from the Dirkse Affidavit and of the omissions that must be added back in.[3] When the Dirkse affidavit is modified as Smith proposes (the "Modified Dirkse Affidavit"), it would provide in relevant part that (in red-line format to clearly show the eliminations and additions) as follows:

1. That I am a Michigan State Police Detective with 20 years' experience and am assisting the Det. Matt Pett with the Bay County Sheriff's Office from Bay City, MI. Det. Pett is investigating a larceny of snowmobiles and enclosed trailer, his complaint number is 1910905617.

2. A subject had been in contact with the nephew of the owner of the stolen snowmobile advising that they were currently at 2918 Nathan Ave. in Flint, Ml. <span style="color:red">This subject is not believed to be located at 2918 Nathan Ave.</span>

3. Upon hearing this information, the owner drove passed 2918 Nathan Ave and from the road identified his Skidoo 700 snowmobile parked

---

[3] The Court is not holding that the Dirkse Affidavit must be so modified under *Franks*. Instead, the Court assumes without deciding that Smith's proposed modifications are proper. The Court need not decide whether those modifications are actually required under Franks because, as explained below, even if the affidavit is modified as Smith requests, it is still sufficient to establish probable cause for the search of the Nathan Residence.

in the driveway. He could positively identify it by the customized wind shield and colors.

4. A property records search identified Donald Smith, Jr. and Patrick Brock as two individuals connected to 2918 Nathan Ave. Officers have no information connecting Smith or Brock to the theft of snowmobiles under investigation.

5. ~~There is another snowmobile in the driveway that is covered up that is believed to also be another stolen snowmobile.~~

6. ~~The snowmobiles in the driveway at 2918 Nathan Ave have been confirmed by VIN number as the reported stolen snowmobiles.~~

5. After officers received the report from the owner of the stolen snowmobiles that his snowmobile was parked in the driveway of 2918 Nathan, MSP D/Sgt. Thomas Dhooge drove to the residence and observed a U-Haul Pickup truck with Arizona registration plate of AJ69678.

6. D/Sgt. Thomas Dhooghe contacted U-Haul who advised that the U-Haul truck was due back on 1/22/20. A demand to return the vehicle if stopped by police was placed on the truck.

7. Soon after, officers observed the U-Haul Pickup truck exit the driveway at 2918 Nathan Ave. Michigan State Police officers stopped the U-Haul Pickup truck, arrested the driver, Donald Smith, Jr., and seized his cellphone. Officers also searched the truck and found no contraband and no stolen tools. Smith is currently in custody.

8. Det. Pett advised that they have investigated three total larceny of trailers where a U Haul box truck was used to pull them based on witness's testimony and video surveillance.

9. One U-Haul box Truck was returned to U-Haul and had stolen tools in them identified by serial numbers reported to Det. Pett.

10. Communication was made between the suspect in the larceny investigation and the victim and his representatives through a texting APP with the phone number of 248-775-[] used by the suspect. The suspect is an individual named Mark Hartman.

14

> <u>Investigators do not have any information suggesting that Hartman resides at, or is connected to, 2918 Nathan Ave.,</u>

11. Through training and experience, your affiant knows that texting APPS are known to be used on cell phones, tablets, computers and any other type of electronic communications device.

12. Further, your affiant and/or fellow officers are seeking a search warrant for ~~the residence(s) of the above noted suspects~~ <u>2918 Nathan Ave.</u> That your affiant believes based on the circumstances detailed above that evidence of the above described ~~homicide~~ <u>larceny</u> and other criminal activity may be found at the below described residence, including but not limited to: ~~DNA evidence, fingerprints , palm prints, controlled substances, computers and the contents therein, electronic storage devices, cell phone(s) and the contents therein, weapons and/ or ammunition,~~ papers and effects showing occupancy, ownership, dominion, or control of said premises, including but not limited to rent and property receipts, keys, bills, and cancelled mail envelopes, stolen property and/or stolen snowmobiles and any other evidence leading to disposition of the larceny of snow mobiles and an enclosed trailer, will be found at **THE FOLLOWING DESCRIBED PLACE(S)**:

    The entire premises, dwelling, curtilage, garages, outbuildings, storage units, vehicles and/ or persons coming to and exiting from the below-described residence, ~~cell phones, cameras,~~ <u>and</u> safes ~~and computers~~ and the contents therein of the aforementioned items, located at 2918 Nathan Ave, City of Flint, Genesee county . . . .

13. Your affiant believes there is probable cause to search the above-described residence including any out buildings for evidence of the above-described crime(s)<u>.</u> ~~including cell phones and/or computers and any other electronic device that may have been used for the communication described above.~~

# D

The Modified Dirkse Affidavit establishes probable cause to search the Nathan Residence because it demonstrates "a fair probability that contraband or

evidence of a crime will be found in" the residence. *Gates*, 462 U.S. at 238. First, the facts set forth in the Modified Dirkse Affidavit establish probable cause to believe that the individual(s) who controlled the Nathan Residence, and its driveway, was receiving, possessing, and/or concealing stolen property, or aiding and abetting in the same, in violation of Michigan law. *See* Mich. Comp. Laws § 750.535. The Modified Dirkse Affidavit states that the snowmobiles located in the driveway of the Nathan Residence had been identified by the victim of the theft as the stolen snowmobiles. That identification establishes a fair probability that the snowmobiles in the driveway were, in fact, the stolen snowmobiles. And that fact, in turn, supports a reasonable inference that the person(s) who controlled the Nathan Residence was in control of the stolen snowmobiles. Indeed, it is fair to infer that the individual in control of a residence has control over the personal property located adjacent to the residence. Thus, the facts in the Modified Dirkse Affidavit sufficiently tie the stolen snowmobiles to the person who had dominion over the Nathan Residence. The identity of that person(s) was therefore material to the larceny investigation.

Second, the Modified Dirkse Affidavit establishes probable cause to believe that evidence identifying the person in control of the Nathan Residence – and thus in control of the stolen snowmobiles – would be found inside the residence. It states that, based on the affiant's, D/Sgt. Dirkse's, twenty years of experience, "papers and effects showing occupancy, ownership, dominion, or control of said premises,

including but not limited to rent and property receipts, keys, bills, and cancelled mail envelopes" would be found in the residence. (*See* Modified Dirse Aff. ¶¶ 1, 11.) Moreover, common sense tells us that papers and effects showing ownership and control of a residence – such as utility bills, mortgage statements, mail, keys, etc. – will often be found within the residence. The combination of D/Sgt. Dirkse's statement and simple common sense are enough to establish a fair probability that evidence demonstrating who had dominion and control over the Nathan Residence – and thus over the stolen snowmobiles – would be found inside the residence.

For these reasons, the Modified Affidavit establishes probable cause to search the Nathan Residence. Accordingly, Smith is not entitled to suppression of the evidence under *Franks*.

### III

The Court next turns to Smith's argument that "the warrant fails to establish a nexus between the evidence requested to be seized and the home to be searched." (Mot., ECF No. 42, PageID.443.) This argument rests upon the rule that a search warrant may issue only where the facts set forth in a sworn affidavit establish "a nexus between the place to be searched and the evidence sought." *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008). Such a nexus exists where there is a "fair probability" that the evidence sought will be found at the location to be searched. *Id.* Smith contends that such a nexus was lacking here because the Dirkse

17

Affidavit established "no factual basis to believe there was evidence of any wrongdoing within" the Nathan Residence. (*Id.*, PageID.444-445.)

The Court disagrees. As explained above, the presence of the stolen snowmobiles on the portion of the driveway of the Nathan Residence that was closest to the house established a fair probability that the person in control of the residence was receiving, possessing, and/or concealing the stolen snowmobile. And there was a fair probability that evidence of that person's identity would be found in the residence. There was thus a nexus between the place to be searched (the Nathan Residence) and the items to be seized (evidence of ownership and control over the residence). The Court therefore declines to suppress the evidence based on Smith's argument that the required nexus is lacking.

## IV

Finally, the Court addresses Smith's argument that the warrant to search the Nathan Residence was invalid because it "authorizes the broadest of searches that 'far outstripped the police's proffered justification for entering the home' – for a snowmobile, electronic devices, and proof of ownership." (*Id.*, PageID.442) (*quoting United States v. Griffith*, 867 F.3d 1265, 1276 (D.C. Cir. 2017)). In other words, Smith contends suppression is warranted because the supporting affidavit only established probable cause to search for and seize a limited number of items, but the warrant authorized police to search for and seize far more than those items.

18

Even if Smith is correct that the scope of the warrant exceeded the scope of probable cause, Smith is not entitled to suppression on that basis. Simply put, the police did not seize the evidence that Smith seeks to suppress when acting pursuant to the purportedly-overbroad portion of the warrant. As explained above, the portion of the warrant authorizing police to enter the Nathan Residence to search for indicia ownership was supported by probable cause and was therefore valid. And police were acting under that portion of the warrant when they entered the residence, saw and seized body armor, drugs, and digital scales in plain view in the kitchen, opened the safe in search of evidence showing who owned and/or controlled the residence,[4] and discovered the guns and drugs. Thus, even if some portion of the warrant exceeded the scope of probable cause possessed by the police, that overbreadth did not result in the seizure of the evidence that Smith seeks to suppress. For that reason, Smith is not entitled to suppression based upon the alleged overbreadth of the warrant.

---

[4] Testimony and common sense suggest that it was a reasonable inference that evidence of occupancy and control would be stored in a safe. (*See* 5/20/2021 Hr'g Tr., ECF No. 40, PageID.265-266.) Indeed, the Sixth Circuit has held that "police ha[ve] the right to open [a] safe" where the warrant authorizes officers to search a home for evidence that may be contained in such a container. *See United States v. Church*, 823 F.3d 351, 357 (6th Cir. 2016).

# V

For all of the reasons explained above, Smith's Motion to Suppress (Mot., ECF No. 25) is **DENIED**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  November 9, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 9, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764
